1  Allen Ruby, Esq. SB #47109
   LAW OFFICES OF ALLEN RUBY
2  125 South Market Street, Suite 1001
   San Jose, California  95113
3  Telephone:  (408) 998-8500

4  Steven A. Ellenberg, Esq., SB # 151489
   LAW OFFICES OF STEVEN A. ELLENBERG
5  125 South Market Street, Suite 1001
   San Jose, California 95113
6  Telephone: (408) 998-8500

7  Attorneys for Plaintiffs

8

9                    **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN JOSE DIVISION**

12  Maria Barrous, an individual and as          CASE NO.  C 10-02944 LHK
    Trustee of the Barrous Living Trust,
13  Demetrios Barrous, an individual, dba
14  Jimmy's Restaurant                           **FIRST AMENDED COMPLAINT FOR
                                                 DAMAGES**
                    Plaintiffs,
15                                               **DEMAND FOR JURY TRIAL**
            v.
16
    BP p.l.c., BP Exploration and Oil, Inc.,
17  BP Products North America, Inc., BP
    Corporation North America, Inc.,
18  ConocoPhillips Company and DOES 1-
    20
19
                    Defendants.
20

21

22                    <u>**NATURE OF THE ACTION**</u>

23          Plaintiff, Jimmy's Restaurant, a local small business, brings this action against global

24  energy giants British Petroleum ("BP") and Conoco Phillips Company ("Conoco").  The

25  action arises out of BP willfully and with a conscious disregard of the rights of adjacent

26  landowners operating gas stations in a manner that polluted the local groundwater and soil.

27  BP admitted to violating California statutes governing the operation of this gas station in a

28  2002 stipulated judgment with the State of California, a judgment in which it paid $230,000

1  in fines.

2      Nonetheless, despite having ten years to remedy its contamination, including

3  reaching an agreement with plaintiff for property access and remediation in 2000, BP and

4  Conoco have utterly failed to clean up the pollution.  This failure has caused the owners of

5  Jimmy's millions of dollars of losses.

## THE PARTIES

7      1.      Plaintiffs Maria Barrous and Demetrios J. Barrous (aka Jimmy) are

8  individuals who reside in Santa Clara County, California.  Maria is the mother of Demetrios.

9  Maria and Demetrios are owners of a business doing business as Jimmy's Restaurant.  The

10  Barrous Living Trust, dated October 22, 2004 ("Trust") is the owner of the real property on

11  which the restaurant is located.  The address of the real property is 222 West Capitol

12  Expressway, San Jose California.  ("Jimmy's Property")  Maria Barrous is the trustee of the

13  Trust.  Demetrios Barrous is a beneficiary of the Trust.  Maria Barrous, Demetrios Barrous

14  and the Trust are collectively referred to as "Plaintiff."

15      2.      BP p.l.c. is a corporation organized under the laws of Great Britain.  Upon

16  information and belief, BP p.l.c. is commonly referred as British Petroleum, a global energy

17  company with many subsidiaries and related entities.  Plaintiff is informed and believes that

18  BP p.l.c. uses its wholly owned U.S. subsidiaries to act as its agents for performing its

19  corporate functions in the United States, including the state of California.

20      3.      Upon information and belief, Defendant BP Exploration and Oil, Inc. ("BP

21  EO") was for at least a time a corporation organized under the laws of at least one state of

22  the United States. Plaintiff is informed and believes that BP EO was at all times relevant a

23  subsidiary of BP p.l.c.  Upon information and belief, BP p.l.c. dissolved BP EO after BP EO

24  executed a contract with Plaintiff.

25      4.      Defendant BP Products North America, Inc., ("BP PNA") is a corporation

26  organized under the laws of the state of Maryland and is a subsidiary of BP p.l.c.  Plaintiff is

27  informed and believes that BP PNA is a wholly owned subsidiary of BP p.l.c. and that BP

28  p.l.c. uses BP PNA as its agent to perform its intended corporate functions in the United

States, including the state of California.

5.      Defendant BP Corporation North America, Inc., ("BP CAN") is a corporation organized under the laws of Indiana and is a subsidiary of BP p.l.c.   Plaintiff is informed and believes that BP PNA is a wholly owned subsidiary of BP p.l.c. and that BP p.l.c. uses BP PNA as its agent to perform its intended corporate functions in the United States, including the state of California.

6.      Plaintiff is informed and believes that BP p.l.c., BP EO, BP PNA and BP CAN, collectively and/or individually have legal responsibility for the claims against the BP entities in the United States that are referenced in this complaint.  Plaintiff refers collectively to these defendants as "BP."

7.      Defendant ConocoPhillips Company ("Conoco") is a global energy company. Upon information and belief, Conoco is a corporation organized under the laws of Delaware and is doing business in California.  Plaintiff is informed and believes that Conoco claims it is the successor in interest to BP for the conduct alleged in this complaint and that it has contractually assumed legal liability for the damages that flow from such conduct.  Plaintiff is also informed and believes that Conoco was until very recently the owner of the Snell Property (as defined below) and owns and operates the gas station located on the Snell Property.

8.      The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein under the fictitious names of DOES 1 to 20, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff will seek leave of court to amend this complaint and insert the true names and capacities of said defendants when the same have been ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the defendants designed herein as "DOE" is legally responsible in some manner for the events and happenings herein alleged, and that plaintiff's damages as alleged herein were proximately caused by such defendants.

9.      At all times material as alleged herein, each Doe defendant was the agent, servant and employee of each of the remaining defendants, and acted within the purpose,

FIRST AMENDED COMPLAINT FOR DAMAGES                                      3

1 | scope and course of said agency, service and employment, with the express and/or implied

2 | knowledge, permission and/or consent of the remaining defendants, and each of them, and

3 | each of said defendants ratified and/or approved the acts of the other defendants.

4 |      10.    Venue is proper in this Court because the injury alleged occurred in this

5 | County.

6 | **COMMON FACTUAL ALLEGATIONS**

7 |      11.    In the late 1980's BP acquired a gas service station located at 3951 Snell

8 | Avenue, San Jose, California. ("Snell Property"). The Snell Property is located next to

9 | Jimmy's Property. Attached as Exhibit "A" is a true and correct copy of a map of the two

10 | properties and their relative locations.

11 |      12.    The Snell Property was subject to various environmental investigations in the

12 | 1980s and 1990s concerning the leaking of hazardous materials from its underground gas

13 | storage tanks. These investigations led the Santa Clara Valley Water District ("SCVWD")

14 | to require BP to do further investigations as well as remediation because of pollution caused

15 | by the operation of the gas station on the Snell Property, namely leaking gas storage tanks.

16 | Part of this investigation was to examine whether Jimmy's Property had suffered any

17 | environmental damage because of the Snell Property gas station.

18 |      13.    Plaintiff is informed and believes that in 1994 BP transferred ownership of the

19 | property and gas station of the Snell Property. Despite the transfer, Plaintiff is informed and

20 | believes that BP contractually agreed to assume responsibility for all obligations related to

21 | environmental contamination.

22 |      14.    In 2000, the individual plaintiffs and BP entered into a contract titled "Access

23 | Agreement." Attached as Exhibit "B" is a true and correct copy of this agreement (the

24 | "Agreement"). Conoco contends that it has assumed all obligations under the "Agreement"

25 | including the tolling agreement described below.

26 |      15.    One purpose of the Agreement was to allow BP to conduct an investigation of

27 | whether the Snell Property environmental pollution had caused damage to Jimmy's

28 | Property; and after such a determination remediate such damage once directed by the Santa

FIRST AMENDED COMPLAINT FOR DAMAGES           4

1   Clara Valley Water District ("SCVWD").

2       16.    Under the Agreement, BP promised plaintiffs that it would perform both its

3   Monitoring Activities and Remediation Activities "in compliance with all applicable laws

4   and regulations and in accordance with generally accepted engineering and industry

5   standards." Agreement, §9. BP also obligated itself to plaintiffs to perform its monitoring

6   and remediation activities with "that degree of thoroughness, competence and care

7   ordinarily exercised by professional consultants working on projects substantially similar in

8   time and nature to the projects contemplated by this Access Agreement." Agreement, §10.

9       17.    BP also agreed to protect the value of the Jimmy's Property. Agreement, §18.

10  Consistent with this value protection agreement, the Agreement prohibited BP from

11  assigning its obligations without Plaintiff's consent. Agreement, ¶26. Finally, BP agreed to

12  toll all statute of limitations as to any claim Plaintiff has against BP because of its conduct.

13      18.    The result of the subsequent environmental investigation made it clear that

14  Jimmy's Property was contaminated with hazardous substances caused by the operations of

15  BP on the Snell Property in a manner that violated California law. Based on the

16  investigation, Plaintiff is informed and believes that initial environmental contamination

17  occurred some time in the 1980s. Plaintiff is informed and believes that this contamination

18  would have been prevented, *inter alia*, if BP (and predecessor owners) had followed

19  California law and properly monitored the gas storage tanks for the gas stations it was

20  operating.

21      19.    Upon information and belief, BP delayed its remediation activities required by

22  SCVWD for at least two years after making the Agreement with Plaintiff.

23      20.    On October 22, 2002, the State of California sued BP in Santa Clara County

24  Superior Court over BP's operation of the Snell Property and other properties on which it

25  operated gas stations. The action was styled *People of the State of California v. BP*

26  *Products North America, Inc*; CV812069 ("People v. BP Complaint"). In the People v. BP

27  Complaint, the state alleged a violation of California Health and Safety Code §25299, which

28  governs the operation of underground hazardous storage tanks. Attached as Exhibit "C" is a

FIRST AMENDED COMPLAINT FOR DAMAGES        5

1  true and correct copy of this complaint.

2      21.    On the same day as the filing of the People v. BP Complaint, BP entered into a

3  stipulated judgment and order with the State in which, among other things, BP admitted to

4  the allegations of the complaint and admitted it was legally obligated to remedy the

5  pollution caused by leaking gas storage tanks on the Snell Property.  BP agreed to pay civil

6  fines and penalties in the sum of $230,000.  Attached as Exhibit "D" is a true and correct

7  copy of this stipulated judgment.

8      22.    Despite its knowledge of the contamination of Jimmy's Property for close to

9  10 years and its admission of liability for the pollution caused by its leaking gas storage

10  tanks, BP has yet to remediate and clean up the contamination on Jimmy's Property.

11      23.    The failure of BP to clean up its pollution on Jimmy's Property has caused

12  Plaintiff damages including preventing plaintiff from maximizing the value of its real

13  property causing plaintiff millions of dollars in damages.  Further, Plaintiff alleges that

14  Defendants' operations of the gas station, and behavior toward Plaintiff, as alleged herein,

15  constitutes "malicious" and "oppressive" conduct as those terms are defined under

16  California Civil Code § 3294.

17                                  **FIRST CAUSE OF ACTION**
              **(Nuisance as against Defendants BP and Does 1-10)**

18

19      24.    Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23

20  as though fully set forth.

21      25.    The release of hazardous substances and toxic materials on the Snell property

22  has also contaminated Jimmy's Property.  This contamination has interfered with and

23  obstructed Plaintiff's free use and enjoyment of the property and other rights of occupancy,

24  thereby constituting a nuisance within the meaning of California Civil Code §§ 3479 and

25  3481.  In light of the continuing the presence of contamination any abatement is uncertain

26  and the nuisance may be permanent.

27      26.    Plaintiff has not consented and does not consent to this nuisance.  BP knew or

28  should have known that Plaintiff did not consent to the nuisance.

1   27. Plaintiff did not learn of the nuisance until 2000 and during that year entered

2 into the tolling agreement with BP as part of the Agreement.

3   28. As a direct and proximate cause of the nuisance, Plaintiff has incurred and will

4 continue to incur expenses, losses and damages as set forth herein.

5   29. Defendants, and each of them, had actual knowledge of the defective

6 conditions and nuisance they created on Jimmy's Property.  The conduct of some or all

7 defendants in causing and failing to abate the nuisance demonstrates a willful and conscious

8 disregard for the right and safety of others.  Plaintiff is therefore entitled to recover punitive

9 damages from some or all defendants in an amount sufficient to deter future such activity.

10   WHEREFORE Plaintiff prays for judgment as set forth below.

11

12

**SECOND CAUSE OF ACTION**
**(Trespass as against Defendants BP and Does 1-10)**

13   30. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 29

14 as though fully set forth.

15   31. The acts of defendants have caused hazardous substances and toxic materials

16 to be deposited beneath Jimmy's Property without Plaintiff's knowledge or consent in a

17 manner that has caused significant property damage.

18   32. Plaintiff is informed and believes and on that basis alleges that defendants

19 knew, or should have known, that their business activities would cause the entry of foreign

20 materials onto Jimmy's Property.

21   33. This entry of foreign material onto Plaintiff's property constitutes a trespass.

22   34. This trespass has caused damage to Plaintiff's property that continues to this

23 day since the pollution has yet to be remedied. As a direct and proximate result of the

24 trespass Plaintiff has suffered damage.

25   35. The acts of defendants were willful, oppressive, fraudulent and malicious and

26 in conscious disregard of Plaintiff's rights.  Plaintiff is there entitled to exemplary damages.

27   WHEREFORE Plaintiff prays for judgment as set forth below.

28 /////

**THIRD CAUSE OF ACTION**
**(Negligence as against Defendants BP and Does 1-10)**

36.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 35 as though fully set forth.

37.     Defendants owed a duty to Plaintiff to operate the Snell Property in such a manner that it did not contaminate Jimmy's Property.

38.     Defendants breached that duty by contaminating Jimmy's Property.

39.     As a direct and proximate result of such breach Plaintiff has suffered damage.

WHEREFORE Plaintiff prays for judgment as set forth below.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract as against Defendants BP and Does 1-10)**

40.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 39 as though fully set forth.

41.     Plaintiff and BP entered into the Agreement attached as Exhibit B to this Complaint.

42.     Plaintiff performed, or was excused from performing, all its obligations under the Access Agreement.

43.     BP breached paragraphs 9 and 10 of the Agreement by failing to perform the remediation activities directed by the SCVWD in accordance with generally accepted professional engineering and industry standards, and with the thoroughness, competence and care ordinarily exercised by professional consultants working on similar projects.

44.     BP also breached the Agreement by failing to protect the value of plaintiff's Property.

45.     BP also breached the Agreement by failing to provide notice to Plaintiff of BP's intent to conduct monitoring activities.

46.     BP also breached the Agreement by assigning its right and obligations under the Agreement to Conoco without Plaintiff's consent.

47.     BP also breached the Agreement by not remedying the contamination caused

1 | by BP's conduct and directed by SCVWD.

2 | 48. As a result of these breaches, Plaintiff has suffered damage.

3 | WHEREFORE Plaintiff prays for judgment as set forth below.

4 | **FIFTH CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing**
5 | **as against Defendants BP and Does 1-10)**

6 | 49. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 48

7 | as though fully set forth.

8 | 50. Plaintiff entered into the Agreement attached as Exhibit B to this Complaint.

9 | 51. In every contract there is implied a covenant of good faith and fair dealing.

10 | 52. The Agreement contemplates that if ordered by SCVWD, BP will perform its

11 | remediation activities competently and in accordance with generally accepted practices.

12 | The Agreement also contemplates that BP will protect the value of Jimmy's Property.

13 | 53. BP has breached the covenant by unfairly interfering with the benefits

14 | Plaintiff expected to receive under the Agreement, including, but not limited to, BP's failure

15 | to timely remedy the contamination caused on Jimmy's Property as directed by SCVWD.

16 | BP also breached the covenant by, upon information and belief, dissolving BP EO.

17 | 54. Plaintiff has suffered damage because of this breach.

18 | WHEREFORE Plaintiff prays for judgment as set forth below.

19 |

20 | **SIXTH CAUSE OF ACTION**
**(Nuisance as against Defendants Conoco and Does 11-20)**

21 | 55. Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23

22 | though fully set forth.

23 | 56. As mentioned previously, Conoco has asserted that it is "successor in interest"

24 | to BP and has assumed responsibility for BP's legal obligations for the matters asserted in

25 | this complaint, included the provision in the Agreement that tolled the statute of limitations

26 | for Plaintiff to bring any cause of action related to the conduct alleged herein. Plaintiff is

27 | unaware on what basis Conoco is asserting such a claim but Plaintiff brings causes of action

28 | numbered six through eleven in the alternative in the event that Conoco is being truthful.

FIRST AMENDED COMPLAINT FOR DAMAGES                                                    9

57.     Plaintiff is further informed and believes that Conoco's operation of the Snell property has resulted in the release of additional toxic materials that has contaminated Jimmy's Property.  Plaintiff did not discover or learn of the contamination caused by Conoco until the last two years.

58.     The release of hazardous substances and toxic materials on the Snell property has also contaminated Jimmy's Property.  This contamination has interfered with and obstructed Plaintiff's free use and enjoyment of the property and other rights of occupancy, thereby constituting a nuisance within the meaning of California Civil Code §§ 3479 and 3481.  In light of the continuing presence of contamination any abatement is uncertain and the nuisance may be permanent.

59.     Plaintiff has not consented and does not consent to this nuisance.  Conoco knew or should have known that Plaintiff did not consent to the nuisance.

60.     Plaintiff did not learn of the nuisance caused by BP until 2000 and during that year entered into a tolling agreement with BP as referenced above.

61.     As a direct and proximate cause of the continuing nuisance, Plaintiff has incurred and will continue to incur expenses, losses and damages set forth above.

62.     Defendants, and each of them, had actual knowledge of the defective conditions and nuisance they created on Jimmy's Property.  The conduct of some or all defendants in causing and failing to abate the nuisance demonstrates a willful and conscious disregard for the right and safety of others.  Therefore, Plaintiff is entitled to recover punitive damages from some or all defendants in an amount sufficient to deter future such activity.

WHEREFORE Plaintiff prays for judgment as set forth below.

### SEVENTH CAUSE OF ACTION
**(Trespass as against Defendant Conoco and Does 11-20)**

63.     Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23 and 55 through 62 as though fully set forth.

64.     The acts of defendants have caused hazardous substances and toxic materials

1  to be deposited beneath Jimmy's Property without Plaintiff's knowledge or consent in a

2  manner that has caused significant property damage.

3       65.   Plaintiff is informed and believes and on that basis alleges that defendants

4  knew, or should have known, that their business activities would cause the entry of foreign

5  materials onto Jimmy's Property.

6       66.   This entry of foreign material onto Jimmy's Property constitutes a trespass.

7       67.   This trespass has caused damage to Jimmy's Property that continues to this

8  day since the pollution has yet to be remedied. As a direct and proximate result of the

9  trespass Plaintiff has suffered damage.

10       68.   The acts of defendants were willful, oppressive, fraudulent and malicious and

11  in conscious disregard of Plaintiff's rights.  Plaintiff is there entitled to exemplary damages.

12       WHEREFORE Plaintiff prays for judgment as set forth below.

13  **EIGHTH CAUSE OF ACTION**<br>**(Negligence as against Defendants Conoco and Does 11-20)**

14

15       69.   Plaintiff incorporates by reference the allegations of Paragraphs' 1 through 23

16  and 55 through 68 as though fully set forth.

17       70.   Defendants owed a duty to Plaintiff to operate the Snell Property in such a

18  manner that it did not contaminate Jimmy's Property.

19       71.   Defendants breached that duty by contaminating Jimmy' Property.

20       72.   As a direct and proximate result of such breach Plaintiff has suffered damage.

21       WHEREFORE Plaintiff prays for judgment as set forth below.

22  **NINTH CAUSE OF ACTION**<br>**(Breach of Contract as against Defendants Conoco and Does 11-20)**

23

24       73.   Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23

25  and 55 through 72 as though fully set forth.

26       74.   Plaintiff and BP entered into the Agreement attached as Exhibit B to this

27  Complaint.  Conoco claims it has assumed all obligations under this agreement.

28       75.   Plaintiff performed, or was excused from performing, all its obligations under

1   the Agreement.

2       76.   Conoco breached paragraphs 9 and 10 of the Agreement by failing to perform

3   the remediation activities directed by the SCVWD in accordance with generally accepted

4   professional engineering and industry standards, and with the thoroughness, competence and

5   care ordinarily exercised by professional consultants working on similar projects.

6       77.   Conoco also breached the Agreement by failing to protect the value of

7   plaintiff's Property.

8       78.   Conoco also breached the Agreement by failing to provide notice to Plaintiff

9   of Conoco's intent to conduct monitoring activities as required under the agreement.

10      79.   Conoco also breached the Agreement by failing to remedy the contamination

11  caused by its conduct and the conduct of BP as directed by SCVWD.

12      80.   As a result of these breaches, Plaintiff has suffered damage.

13      WHEREFORE Plaintiff prays for judgment as set forth below.

14                    **TENTH CAUSE OF ACTION**
    **(Breach of Covenant of Good Faith and Fair Dealing**
15    **as against Defendants Conoco and Does 11- 20)**

16      81.   Plaintiff incorporates by reference the allegations of Paragraphs 1 through 23

17  and 55 through 80 as though fully set forth.

18      82.   Plaintiff entered into the Agreement attached as Exhibit B to this Complaint as

19  referenced herein.  Conoco claims it has assumed all obligations under this agreement.

20      83.   The Agreement contemplates that if ordered by SCVWD, Conoco will

21  perform its remediation activities competently and in accordance with generally accepted

22  practices.  The Agreement also contemplates that Conoco will protect the value of Jimmy's

23  Property.

24      84.   Conoco has breached this covenant by unfairly interfering with the benefits

25  Plaintiff expected to receive under this Agreement, including, but not limited to, Conoco's

26  failure to timely remedy the contamination caused on Jimmy's Property as directed by

27  SCVWD.

28      85.   Plaintiff has suffered damage because of this breach

1  WHEREFORE Plaintiff prays for judgment as set forth below.

2  **ELEVENTH CAUSE OF ACTION**
**(Interference with Contractual Relations**
3  **as against Defendants Conoco and Does 11- 20)**

4  86.  Plaintiff incorporates by reference each and every allegation in Paragraphs 1

5  through 20 and 55 through 89 as though fully set forth.

6  87.  Pursuant to the Agreement attached as Exhibit B to the Complaint, Plaintiff

7  was in a contractual relationship with BP.

8  88.  Plaintiff is informed and believes that Conoco was aware of the Agreement

9  and that Conoco knew that the Agreement could not be assigned without Plaintiff's consent.

10  89.  Plaintiff is informed and believes that Conoco induced a breach or disruption

11  of Plaintiff's contractual relationship with BP by wrongfully asserting, *inter alia*, that it

12  could assume the obligations without Plaintiff's consent and that it did so to acquire the

13  benefits of the land and gas station, a benefit it could not have received if it had to satisfy

14  Plaintiff that it would honor promptly BP's obligations under the Agreement.

15  90.  Conoco's actions have caused a breach of the contractual relationship between

16  BP and Plaintiff.

17  91.  Plaintiff has been damaged by Conoco's actions.

18  WHEREFORE Plaintiff prays for judgment as set forth below.

19  **TWELFTH CAUSE OF ACTION**
**(Declaratory Relief against All Defendants)**
20

21  92.  Plaintiff incorporates by reference each and every allegation in Paragraphs 1

22  through 91 as though fully set forth.

23  93.  There exists a current controversy between Plaintiff and all defendants over

24  their respective legal obligations arising out of the facts alleged in this complaint;

25  94.  To the extent such facts do not give rise to questions of facts that must be

26  determined by a jury, plaintiff requests a legal declaration of the parties respective legal

27  obligations to each other and for an order enforcing those legal obligations.

28  WHEREFORE Plaintiff prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

Plaintiffs Maria Barrous, an individual and as Trustee of the Barrous Living Trust, and Demetrious Barrous, an individual, dba Jimmy's Restaurant pray for judgment as follows:

1.    For judgment against defendants;

2.    For compensatory damages against, including interest thereon according to proof in excess of the jurisdictional minimum of this Court;

3.    For exemplary damages as provided for under California law for applicable causes of action;

4.    For a declaration regarding the rights and obligations of the parties;

5.    For costs of suit; and

6.    For such other and further relief as the Court deems just and proper.

DATED: November 12, 2010    LAW OFFICES OF ALLEN RUBY

LAW OFFICES OF STEVEN A. ELLENBERG

BY _____
STEVEN A. ELLENBERG
Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiffs Maria Barrous, an individual and as Trustee of the Barrous Living Trust, and Demetrious Barrous, an individual, dba Jimmy's Restaurant demand a jury trial on all applicable claims.

DATED: November 12, 2010    LAW OFFICES OF ALLEN RUBY

LAW OFFICES OF STEVEN A. ELLENBERG

BY _____
STEVEN A. ELLENBERG
Attorney for Plaintiff

I:\BARROUS\P\First Amended Complaint.doc
FIRST AMENDED COMPLAINT FOR DAMAGES                                        14

**Exhibit A**

Figure 1
Site Plan

3951 SNELL AVENUE
SAN JOSE, CALIFORNIA

BP OIL COMPANY
FORMER STATION 11209

LEGEND

MW-1 ⊙   GROUNDWATER MONITORING WELL

EW-1 △   SOIL/VAPOR EXTRACTION WELL

P-3 ○   MULTI-PHASE INFLUENCE MONITORING
         WELL

# Exhibit B

## ACCESS AGREEMENT

This ACCESS AGREEMENT ("Access Agreement") dated September 1, 2000 is entered by and between John, Maria and Jimmy Barrous (collectively "Jimmy's Restaurant") and BP Exploration and Oil, Inc. ("BP") (collectively, the "parties") in order to permit BP to perform investigation, monitoring and remediation activities as required by the Santa Clara Valley Water District ("SCVWD").

## RECITALS

A.    Pursuant to the request of the SCVWD, BP is required to conduct an investigation of groundwater conditions under the Jimmy's Restaurant property located at 222 West Capitol Expressway, San Jose, California (" the Property"). BP therefore requires access to the Property to perform this investigation, which includes installation of monitoring wells and collection of groundwater samples from monitoring wells (collectively "Monitoring Activities").

B.    BP anticipates that it may be necessary to install on the Property one or more extraction wells and underground pipes that will connect the extraction wells with remedial equipment to be located on the gasoline station at 3951 Snell Avenue, San Jose California, directly adjacent to the Property ("the Gasoline Station"). BP will extract groundwater from under the Property through the pipes until such time as the SCVWD determines that the groundwater contamination under the Property has been abated. All activities specified in Recital B of this Access Agreement will be collectively known as the "Remediation Activities".

C.    Jimmy's Restaurant owns and controls the Property.

1

D.   BP sold its interests in the Gasoline Station to Tosco in 1994 and no longer owns or has any property interest in the Gasoline Station.

NOW THEREFORE, the parties agree as follows:

1.   **Grant of Access for Monitoring Activities.** Jimmy's Restaurant grants BP access to the Property for the purpose of conducting the following Monitoring Activities:

(a)   Installation of groundwater monitoring wells which the SCVWD requires BP to install on the Property. The wells are to be located as indicated on the map entitled Figure 1, Proposed Geoprobe and Well Locations (attached hereto as Exhibit A), or as to be determined by BP in consultation with the SCVWD and Jimmy's Restaurant. BP believes that three (3) monitoring wells will be necessary. The parties understand that additional monitoring wells may be required by SCVWD.

(b)   Collect groundwater samples and water levels from the monitoring wells on a quarterly basis, or as the SCVWD may require.

(c)   All wells specified in Paragraph 1 of this Access Agreement shall be referred to collectively as "Monitoring Wells."

2.   **Grant of Access for Remediation Activities.** Jimmy's Restaurant grants BP access to the Property for the purpose of conducting the following Remediation Activities:

(a)   Install extraction wells as required by SCVWD (the "Extraction Wells") at locations to be determined by the results of the Monitoring Activities and in consultation with the SCVWD and Jimmy's Restaurant.

(b)   Install underground pipes (the "Pipes") that will connect the Extraction Wells with remedial equipment to be located on the Gasoline Station.

2

DFR_LSH:[VERSION1260.102]DOCMM01.DOC}

(c)   Make all necessary repairs and modifications to the Pipes and Extraction Wells.

3.   Temporary License. Jimmy's Restaurant grants BP a temporary license to the Property, the Monitoring Wells, Extraction Wells and Pipes. This Access Agreement is not a grant of easement or any other interest in the Property, Monitoring Wells, Extraction Wells or Pipes.

4.   Costs. BP shall bear the entire cost of the Monitoring Activities and Remediation Activities performed by BP, its consultants or agents under this Access Agreement.

5.   Jimmy's Restaurant Attorney and Environmental Consultant. Jimmy's Restaurant has retained Joseph Kafka as counsel to protect its legal interests in connection with the groundwater contamination referenced in Recital A to this Access Agreement, the Monitoring Activities and the Remediation Activities. BP will reimburse Jimmy's Restaurant for necessary and reasonable attorney's fees and environmental consultant costs, not to exceed a collective total of $5,474. Any disputes between the parties regarding the necessity or reasonability of such fees shall be submitted for mediation to Mr. William L. Nagle, 345 Lorton Avenue, Suite 204, Burlingame, CA 94010.

6.   Use and Enjoyment. BP shall perform the Monitoring Activities and Remediation Activities in a manner that minimizes interference with the business operations of Jimmy's Restaurant and of any occupant of the Property or the use and enjoyment of such Property by any owner or any tenant at the Property. BP has been informed by Jimmy's Restaurant that Jimmy's Restaurant operates a restaurant on the Property which is open twenty-four (24) hours, 7 days per week. BP shall perform the Monitoring Activities and Remediation

3

Activities so as minimize interference with the Jimmy's Restaurant business and shall schedule installation and monitoring work at times acceptable to Jimmy's Restaurant..

      7.    Advance Notice/Scheduling.  Except in the case of an emergency, BP shall give Jimmy's Restaurant notice of its intent to conduct Monitoring Activities or Remediation Activities at least ten (10) business days in advance of each event requiring access to the Property, to any of the Monitoring Wells, Extraction Wells or to the Pipes.  Jimmy's Restaurant may request modification of the schedule by providing BP with notice at least five (5) business days in advance of the scheduled work.

      8.    Safety.  BP is solely responsible for any death, injury, damage, or loss to any persons or property caused by (1) the entry of BP or its employees, subcontractors or agents on the Property where the Monitoring Wells, Extraction Wells or Pipes are located or (2) any act or omission by BP, or its employees, subcontractors, or agents.  BP on its own behalf and on behalf of any person employed by it entering the Property to perform the Monitoring Activities or Remediation Activities, waives and releases any claim against Jimmy's Restaurant, its owners, operators, employees, agents, and successors in interest arising in connection with the performance of the Monitoring Activities or Remediation Activities except and to the extent that such claim arises out of the negligence or willful misconduct of Jimmy's Restaurant or its owners, operators, employees, agents and successors.  Jimmy's Restaurant shall have no responsibility to supervise or observe the activities of BP or its consultants and any lack of supervision by Jimmy's Restaurant of BP or its consultants shall not constitute negligence or willful misconduct within the meaning of this Paragraph.

4

SFPG_LIB\OTSFPGM\1988.GKP\TCFHRE\.DOC}

9. Compliance with Law. BP and its employees, subcontractors, and agents shall perform the Monitoring Activities and Remediation Activities in compliance with all applicable laws and regulations ("Applicable Laws") and in accordance with generally accepted professional engineering and industry standards. BP shall be designated the generator of any waste produced in performing the Monitoring Activities and Remediation Activities and shall complete and sign any manifests or other documents necessary for proper storage, transportation, treatment, or disposal of such waste in accordance with Applicable Laws.

10. Standard of Care. Monitoring Activities and Remediation Activities contemplated by this Access Agreement shall be performed by BP and its employees, subcontractors, or agents with that degree of thoroughness, competence, and care ordinarily exercised by professional consultants working on projects substantially similar in time and nature to the projects contemplated by this Access Agreement.

11. Clean Site. BP shall remove from the Property, in compliance with Applicable Laws, all sampling wastes, equipment, and other materials belonging to its employees, subcontractors, or agents within five (5) business days of the completion of any Monitoring Activities or Remediation Activities.

12. Removal of Monitoring Wells, Extraction Wells or Pipes and Restoration of the Property. Within thirty (30) days of completion of the Remediation Activities, BP shall remove the Monitoring Wells, Extraction Wells and Pipes from the Property and restore the surface areas of the Property disturbed by the Monitoring Activities or Remediation Activities.

13. Relocation of Monitoring Wells, Extraction Wells or Pipes. In the event that Jimmy's Restaurant, its tenant or successor in interest wishes to perform construction on the

5

Property that is incompatible with the location of the Extraction Wells or Pipes, BP will, at its own expense and within 90 days of receipt of notice from Jimmy's Restaurant, relocate the Extraction Wells or Pipes to a location that is compatible with the contemplated construction and the Monitoring Activities or Remediation Activities.

14. <u>Tree Damage Analysis</u>. BP has been informed by Jimmy's Restaurant that magnolia trees located along the northwest boundary and pine trees located along the northeast boundary of the Property are in poor health. BP will, at its own expense, hire an arborist to determine whether trees have been damaged by the groundwater contamination referred to in Recital A of this Access Agreement. If the arborist determines that the trees have been damaged by such groundwater contamination, BP will have the trees replaced at BP's cost.

15. <u>Vapor Testing</u>. BP will, at its own expense and within 30 days of the date this Access Agreement becomes effective, obtain air samples from inside the Jimmy's Restaurant building for hydrocarbon testing. This testing shall include an analysis of volatile organic compound levels in the ambient air inside the Jimmy's Restaurant building. The results of the vapor testing will be provided to Jimmy's Restaurant in accord with Paragraph 22 of this Access Agreement.

16. <u>Compensation</u>. BP shall pay $5,000 to Jimmy's Restaurant as an access fee to cover all access granted by this Access Agreement.

17. <u>Indemnity</u>. BP shall indemnify, defend, and hold harmless Jimmy's, Restaurant its directors, officers, employees, and successors in interest, from and against all claims brought by a third party arising out of and resulting from performance of the Monitoring Activities or Remediation Activities by BP or its employees, contractors, subcontractors, or

6

agents, except and to the extent that any such claim or liability results from the negligence or willful misconduct of Jimmy's Restaurant, its employees, or agents. Jimmy's Restaurant shall have no responsibility to supervise or observe the activities of BP or its consultants and any lack of supervision by Jimmy's Restaurant of BP or its consultants shall not constitute negligence or willful misconduct within the meaning of this Paragraph.

18.     Value Protection Agreement.  In order to avoid any loss in market value of the Property that is attributable to the contamination caused by BP, the Monitoring Activities or the Remediation Activities, BP agrees to provide an indemnity to any lender, lessee or purchaser of the Property from Jimmy's Restaurant to protect such lender, lessee, or purchaser from liability for releases of gasoline from the Gasoline Station which are attributable to BP's operations.

19.     No Liens.  BP shall keep and shall require its subcontractors and agents to keep the Property free and clear of all liens and encumbrances, including but not limited to mechanics' liens, arising out of the performance of the Monitoring Activities or Remediation Activities.  Should any such lien or encumbrance be imposed, BP shall secure a bond for the removal of the lien.  In addition, BP shall indemnify, defend, and hold harmless Jimmy's Restaurant from and against the cost of removing any such liens or encumbrances.

20.     No Admission of Liability.  By entering into this Access Agreement, Jimmy's Restaurant and BP do not admit, nor are they deemed to have admitted, any liability or responsibility for the presence of any hazardous substances or chemicals in any container, soil, vapor, surface water, groundwater or other media encountered during the Monitoring Activities

7

or Remediation Activities. Jimmy's Restaurant and BP waive no legal rights or remedies by entering into this Access Agreement.

21.     Notice. Any notices, reports, or other communication required or permitted under this Access Agreement shall be in writing and addressed to the representative for each party as set forth below:

BP:

Scott Hooton
BP Oil Company
295 S.W. 41st Street
Building 13, Suite N
Renton, Washington 98055

Jimmy's Restaurant

Joseph R. Kafka
1631 Willow Street
Suite 100
San Jose, California 95125

When immediate notice is essential, such notice or communication shall be deemed sufficiently made when personal communication is made with the above-named person and a confirming letter is delivered, as addressed above.

22.     Field Data and Technical Reports. BP shall deliver to Jimmy's Restaurant a copy of any reports or submittals submitted by BP to the SCVWD in connection with the Monitoring Activities or Remediation Activities within ten (10) working days of submittal to the SCVWD.

23.     Noise or Substantial Interference With Use of Property. The parties recognize that the noise generated by the operation of the remedial equipment to be located on the Gasoline Station in connection with the Remediation Activities may be disruptive to the

operation of the Jimmy's Restaurant business. The parties agree to jointly determine whether such noise is disruptive after the remedial equipment is installed and operational. If the parties jointly determine that the noise or other substantial interference with the use of the Property generated by the remedial equipment is disruptive, BP will, at its own expense, take steps to reduce the audible noise or remove the substantial interference with use of the Property. If the parties cannot jointly agree to resolve the matter, the parties shall submit the matter for mediation to Mr. William L. Nagle, 345 Lorton Avenue, Suite 204, Burlingame, CA. 94010.

24. Tosco. Scott Hooton, in his capacity as a representative of BP, agrees to contact Tosco, the current owner of the Gasoline Station, regarding Jimmy's Restaurant's desire to construct a cement wall between the Property and the Gasoline Station.

25. Dispute Resolution. Any dispute between the parties arising out of this Access Agreement, the Monitoring Activities, the Remediation Activities or any other activity described in or contemplated by this Access Agreement shall be submitted for mediation to Mr. William L. Nagle, 345 Lorton Avenue, Suite 204, Burlingame, CA. 94010. BP shall pay Mr. Nagle's mediation fees for all matters submitted to mediation. Mr. Nagle may award attorneys fees to the prevailing party or in his discretion.

26. Assignment. BP shall not assign its rights or obligations under this Access Agreement without prior written consent of Jimmy's Restaurant.

27. Governing Law. This Access Agreement shall be governed by and construed in accordance with the laws of the State of California.

9

28.    Counterparts.  This Access Agreement may be executed in counterparts and each such executed counterparts shall be deemed an original, but all of which together shall constitute a single instrument.

29.    Modification.  This Access Agreement may not be amended except in writing by the parties to this Agreement.

30.    Tolling Agreement.  The parties hereby agree to toll any applicable Statute of Limitation in connection with the contamination concerning the Subject Property which contamination was caused by BP.  Such tolling period shall commence on the date of execution of the Access Agreement and shall continue until completion of the Monitoring Activities and Remediation Activities as determined by the SCVWD.  This Tolling Agreement shall not be applicable to any Statute of Limitations or portion of any Statute of Limitations which may have expired prior to the date of execution of the Access Agreement.

31.    Termination.  This Access Agreement shall terminate automatically upon completion of Monitoring Activities and Remediation Activities as determined by the SCVWD, provided that the provisions of Paragraph 18 shall survive termination of this Access Agreement.

10



Figure 1
PROPOSED GROUNDWATER
WELL LOCATIONS
2445 SNELL AVENUE
SAN JOSE, CALIFORNIA

The parties each represent and warrant that this Access Agreement is

executed by their duly authorized representatives.

Dated: August 3?, 2000

JIMMY'S RESTAURANT

By: _____

Title: Owner

September
Dated: August 14, 2000

BP EXPLORATION AND OIL, INC.

By: _____

Title: Team Leader

11

BPXLDB\T7249\21896\0O6\17G7725\1.DOC)

**Exhibit C**

(ENDORSED)

Oct 22  10 00 AM '02

SUPERIOR COURT...CMO
CO. OF SA... OF CA.
BY
Rose Rojas...CLARA
...DEPUTY

1  GEORGE W. KENNEDY, DISTRICT ATTORNEY,
   CSB. NO. 52527
2  JOHN FIORETTA, DEPUTY DISTRICT ATTORNEY,
   CSB. NO. 104416
3  County Government Center, West Wing
   70 W. Hedding Street
4  San Jose, California 95110
   Telephone:  (408) 792-2638
5
   Attorneys for Plaintiff
6

7

8              SUPERIOR COURT OF CALIFORNIA
9                 COUNTY OF SANTA CLARA

10 PEOPLE OF THE STATE OF            ) No.:
   CALIFORNIA,                       )
11                                   )     CV812069
                                     )
12      Plaintiff,                   )
                                     )  COMPLAINT FOR CIVIL PENALTIES,
13      v.                           )  INJUNCTION, AND OTHER RELIEF
                                     )
14 BP PRODUCTS NORTH AMERICA, INC.   )
                                     )
15 Defendant                         )
   _____)
16
          THE PEOPLE OF THE STATE OF CALIFORNIA, by and through
17 GEORGE W. KENNEDY, DISTRICT ATTORNEY OF THE COUNTY OF SANTA
18 CLARA, to protect the public and the environment, allege as
19 follows:
20
                    **GENERAL ALLEGATIONS**
21      1. California Health and Safety Code sections 25299.01
22 and 25299.02 authorize this action.
23      2. Defendant BP PRODUCTS NORTH AMERICA, INC. is now,
24 and at all times mentioned herein was, a corporation duly
25 organized and existing under the laws of the state of
26                             1

ge W. Kennedy
strict Attorney
ty of Santa Clara
se, California 95110  Complaint

Delaware and authorized to do business in the state of California.

3. Defendant is now, and at all times mentioned herein was, doing business in the County of Santa Clara, State of California, where the events, actions, and omissions complained of herein occurred.

4. Defendant is now, and at all times mentioned herein was, in the business of owning and operating gasoline service stations.

5. Prior to the times mentioned herein, Defendant owned the gasoline service stations located at 3951 Snell Avenue, City of San Jose, County of Santa Clara, and 1099 Blossom Hill Road, City of San Jose, County of Santa Clara (hereafter the "Snell" and "Blossom Hill" stations) where the events, actions, and omissions complained of herein occurred.

6. Prior to the times mentioned herein, Defendant sold the Snell and Blossom Hill stations to TOSCO Marketing Co. (TOSCO).

7. At the time Defendant sold the Snell and Blossom Hill stations to TOSCO, Defendant retained responsibility for environmental clean up at those locations.

rge W. Kennedy
District Attorney
nty of Santa Clara
ose, California 95110

Complaint

2

8.   Whenever in this complaint any reference is made to any act or omission of Defendant, such allegations shall be deemed to mean that Defendant and its officers, agents, employees, or representatives did or authorized to be done such acts or omissions while actively engaged in the management, direction, or control of the affairs of said business and while acting within the course and scope of their duties.

## FIRST CAUSE OF ACTION
## HEALTH AND SAFETY CODE SECTION 25299(b)(7)

9.   Plaintiff realleges and incorporates by this reference each and every General Allegation enumerated as paragraphs 1 through 8 ("General Allegations").

10.   Plaintiff alleges that beginning on an exact date that is unknown, but within five years after the discovery by Plaintiff of the facts forming the basis for this cause of action, Defendant, as the former owner and operator of an underground tank system, failed to perform monitoring, testing, and reporting at the Snell and Blossom Hill stations as required by Health and Safety Code section 25289.

11. As a consequence of Defendant's failure to perform required monitoring, testing, and reporting as alleged in this FIRST CAUSE OF ACTION, the Defendant is liable for a

3

·rge W. Kennedy
District Attorney
nuty of Santa Clara
lose, California 95110

Complaint

1  civil penalty in the amount of not less than FIVE HUNDRED

2  DOLLARS ($500) nor more than FIVE THOUSAND DOLLARS ($5,000)

3  for each underground storage tank for each day of violation

4  pursuant to Health and Safety Code section 25299(b).

5  **PRAYER FOR RELIEF**

6  12. WHEREFORE Plaintiff demands judgment as follows:

7  A.  For a final and permanent injunction restraining

8  and enjoining Defendant and its agents, servants, and

9  employees from engaging in or performing, directly or

10 indirectly, any and all acts or practices in the State of

11 California in violation of Chapter 6.7 of Division 20 of

12 the Health and Safety Code (§§ 25280 et seq.) and/or the

13 

14 regulations adopted pursuant to said laws;

15 B.  On the FIRST CAUSE OF ACTION, for civil penalties

16 ~~in the maximum amount of FIVE THOUSAND DOLLARS ($5,000) per~~

17 day for each underground storage, tank for each day of

18 violation, for each violation of Health and Safety Code

19 

20 section 25299;

21 C.  For Plaintiff's costs of suit incurred in this

22 action, including but not limited to, the costs of

23 investigating and prosecuting this action incurred by the

24 Santa Clara Valley Water District;

25 

26                                    4

rge W. Kennedy
District Attorney
nty of Santa Clara
ose, California 95110

Complaint

1

2      D.   For such other and further relief as is proper and

3   just under the circumstances.

4

5

6

7          Respectfully Submitted,

8          GEORGE W. KENNEDY, DISTRICT ATTORNEY

9

10         By:

11         John Fioretta

12         Deputy District Attorney
           Environmental Protection Unit

13

14

15

16

17

18

19

20

21

22

23

24

25

26

George W. Kennedy
District Attorney
County of Santa Clara
Jose, California 95110

Complaint

**Exhibit D**

(ENDORSED)

Oct 22  10 00 AM '02

KIRI TORRE, C/O
SUPERIOR COURT OF CA.
CO. OF SANTA CLARA
BY_____ DEPUTY
**Rose Rojas**

1  GEORGE W. KENNEDY, DISTRICT ATTORNEY,
CSB. NO. 52527
2  JOHN FIORETTA, DEPUTY DISTRICT ATTORNEY,
CSB. NO. 104416
3  County Government Center, West Wing
70 W. Hedding Street
4  San Jose, California 95110
Telephone:  (408) 792-2638
5
Attorneys for Plaintiff
6

7

8                    SUPERIOR COURT OF CALIFORNIA
                          COUNTY OF SANTA CLARA
9

10  THE PEOPLE OF THE STATE OF        ) No.:      **CV812069**
    CALIFORNIA,                       )
11                                    )
                                      )
12        Plaintiff,                  ) STIPULATION FOR ENTRY OF FINAL
                                      ) JUDGMENT AND INJUNCTION
13        v.                          )
                                      )
14  BP PRODUCTS NORTH AMERICA, INC.   )
                                      )
15                                    )
    Defendant                         )
16        THE PEOPLE OF THE STATE OF CALIFORNIA, appearing

17  through their attorney GEORGE W. KENNEDY, DISTRICT ATTORNEY

18  OF THE COUNTY OF SANTA CLARA, by John Fioretta, Deputy

19  District Attorney, Environmental Protection Unit, and

20  Defendant, BP PRODUCTS NORTH AMERICA, INC., appearing by

21  and through its attorney, Stephen A.K. Palmer, Esq.,

22  STIPULATE and consent that final judgment be entered in

23  favor of the Plaintiff and against the Defendant on request

24  of any party without notice to the other parties, as

25  follows:

26                              1

ge W. Kennedy
strict Attorney
ty of Santa Clara
se, California 95110

Stipulation for Entry of Final Judgment and Injunction

1.   This Court has jurisdiction over the subject matter of the Complaint.

2.   Defendant has been served with a copy of the Complaint, and acknowledges that this Court has personal jurisdiction over it.

3.   Defendant admits the allegations of the Complaint.

4.   Defendant and its agents, servants, and employees SHALL BE PERMANENTLY RESTRAINED AND ENJOINED, from the date this Stipulation is filed, from violating any requirement of the following statutes at the gasoline service stations located at 3951 Snell Avenue, City of San Jose, County of Santa Clara, and 1099 Blossom Hill Road, City of San Jose, County of Santa Clara (hereafter the "Snell" and "Blossom Hill" stations):

Chapter 6.7 of Division 20 of the California Health and Safety Code (§§ 25280 et seq.) and the regulations adopted pursuant to said laws;

5. Defendant is no longer the owner or operator of the Snell and Blossom Hill stations but Defendant's transfer of ownership does not alter Defendant's obligation to take remedial actions for leaking underground storage tanks which were once located at those sites.  Defendant and its agents, servants, and employees SHALL BE MANDATED to comply with all requirements of the following exhibits:

2

Stipulation for Entry of Final Judgment and Injunction

rge W. Kennedy
District Attorney
nty of Santa Clara
Jose, California 95110

a. Exhibit A-1 (Site Investigation and Cleanup Requirements for Blossom Hill station, dated September 25, 2002, 5 pages);

b. Exhibit A-2 (Site Investigation and Cleanup Requirements for Snell station, dated September 25, 2002, 5 pages);

c. Exhibit B-1 (Corrective Action Plan for Blossom Hill station, dated September 9, 2002, 17 pages, including attachments); and

d. Exhibit B-2 (Corrective Action Plan for Snell station, dated September 9, 2002, 17 pages, including attachments).

Each of these documents is attached hereto and is incorporated by reference.

6.   Pursuant to Health and Safety Code section 25299, subdivisions (b) and (f), Defendant shall pay the sum of TWO HUNDRED THOUSAND DOLLARS ($200,000) in satisfaction of all civil penalties alleged owing in the Complaint. Payment shall be made contemporaneously with the execution of this Stipulation, by forwarding the following to the Santa Clara County District Attorney's Office:

a. The sum of TWO HUNDRED THOUSAND DOLLARS ($200,000) made payable to the Santa Clara Valley Water District.

7. Defendant shall further pay the sum of THIRTY THOUSAND DOLLARS ($30,000) to the National Water Research

3

ge W. Kennedy
istrict Attorney
nty of Santa Clara
se, California 95110

1 Institute for a Special Environmental Project to study what
2 is the optimal design for an environmental monitoring
3 program to detect releases of gasoline and its constituents
4 including Methyl tert Butyl Ether (MtBE) that are not
5 otherwise detected by existing underground storage tank
6 monitoring and detection systems.  This Special
7 Environmental Project is described in Exhibit C, entitled
8 "Supplemental Environmental Program, Settlement for 3951
9 Snell Avenue and 1099 Blossom Hill Road, San Jose," dated
10 January 10, 2002 (2 pages), which is attached hereto and
11 incorporated by this reference.  Payment shall be made
12 contemporaneously with the execution of this Stipulation,
13 by forwarding the following to the Santa Clara County
14 District Attorney's Office:

15     The sum of THIRTY THOUSAND DOLLARS   ($30,000) made
16 payable to the National Water Research Institute.

17     8.   Defendant shall further pay the sum of THREE
18 HUNDRED NINETY-NINE DOLLARS ($399) in satisfaction of all
19 Plaintiff's costs incurred in this Court action.  Payment
20 shall be made contemporaneously with the execution of this
21 Stipulation, by forwarding the following to the Santa Clara
22 County District Attorney's Office:

23     The sum of THREE HUNDRED NINETY-NINE DOLLARS ($399)
24 payable to the Clerk of the Superior Court.

25
26

4

Stipulation for Entry of Final Judgment and Injunction

9.   Jurisdiction is retained for the purpose of enabling any party to this Final Judgment to apply to the Court at any time for such further order and directions as may be necessary and appropriate for the construction of, for the carrying out of, for the modification of any injunctive provisions of, for the enforcement of compliance of, or for the punishment of violations of, this Final Judgment.

GEORGE W. KENNEDY, DISTRICT ATTORNEY          Dated:

By: _____          10/21/02
    John Fioretta
    Deputy District Attorney
    Attorneys for Plaintiff


BP PRODUCTS NORTH AMERICA, INC.
Dated:

By: _____          10/15/02
    Chris Winsor
    Manager, GEM Marketing-West
    Corporate Representative
    BP PRODUCTS NORTH AMERICA, INC.

By: _____          10/2/02
    Stephen A. K. Palmer, Esq.
    Attorney for Defendant

```
 1  GEORGE W. KENNEDY, DISTRICT ATTORNEY,
    CSB. NO. 52527
 2  JOHN FIORETTA, DEPUTY DISTRICT ATTORNEY,
    CSB. NO. 104416
 3  County Government Center, West Wing
    70 W. Hedding Street
 4  San Jose, California 95110
    Telephone:  (408) 792-2638
 5
    Attorneys for Plaintiff
 6
 7
 8              SUPERIOR COURT OF CALIFORNIA
                  COUNTY OF SANTA CLARA
 9
10  PEOPLE OF THE STATE OF          ) No.:
    CALIFORNIA,                     )
11                                  )      CV812069
                                    )
12       Plaintiff,                 ) ORDER OF FINAL JUDGMENT AND
                                    ) INJUNCTION
13              v.                  )
                                    )
14  BP PRODUCTS NORTH AMERICA, INC. )
                                    )
15  Defendant
```

**(ENDORSED) FILED**

OCT 22  10 00 AM '02

KIRI ... CLD
SUPERIOR CO ... OF CA.
CO. OF SAN ... CLARA
BY _____
                    DEPUTY

Rose Rojas

**ORDER**

Good cause appearing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the foregoing Stipulation for Entry Of Final Judgment and Injunction is adopted and entered as the Order of Final Judgment and shall take effect immediately.

The Clerk is ORDERED to enter this Judgment and Injunction.

Dated:   OCT 22 2002

Jamie Jacobs-May
JUDGE OF THE SUPERIOR COURT

1

Order of Final Judgment and Injunction