1  GLYNN & FINLEY, LLP
   ADAM FRIEDENBERG, Bar No. 205778
2  JONATHAN A. ELDREDGE, Bar No. 238559
   One Walnut Creek Center
3  100 Pringle Avenue, Suite 500
   Walnut Creek, CA 94596
4  Telephone: (925) 210-2800
   Facsimile: (925) 945-1975
5
   Attorneys for Defendants
6  BP P.L.C., BP Exploration and Oil, Inc.,
   BP Products North America, Inc., and
7  BP Corporation North America, Inc.,
   and ConocoPhillips Company
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  MARIA BARROUS, an individual and as        )  **Case No. C 10-02944 LHK**
    Trustee of the Barrous Living Trust,       )
12  DEMETROIS BARROUS, an individual,          )  **DEFENDANT CONOCOPHILLIPS**
    dba Jimmy's Restaurant,                    )  **COMPANY'S NOTICE OF MOTION**
13                                             )  **AND MOTION TO COMPEL FURTHER**
                      Plaintiffs,              )  **DISCOVERY RESPONSES AND**
14                                             )  **PRODUCTION OF DOCUMENTS**
          vs.                                  )  **AGAINST PLAINTIFFS**
15                                             )
    BP P.L.C., BP EXPLORATION AND OIL,         )
16  INC., BP PRODUCTS NORTH AMERICA,           )  Date:    April 12, 2011
    INC., BP CORPORATION NORTH                 )  Time:    10:00 a.m.
17  AMERICA, INC., CONOCOPHILLIPS              )  Place:   Courtroom 5, 4th Floor
    COMPANY and DOES 1-20, inclusive,          )  Judge:   Hon. Paul S. Grewel
18                                             )
                      Defendants.              )
19  _____  )

20

21  TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

22          PLEASE TAKE NOTICE THAT on April 12, 2011 at 10:00 a.m., or as soon thereafter as

23  the matter may be heard, before the Honorable Paul S. Grewel, Defendant ConocoPhillips

24  Company ("COP") will bring on for hearing this motion to compel further discovery responses

25  and production of documents by Plaintiffs.  This motion is made pursuant to Federal Rule of

26  Civil Procedure, Rule 37(a) on the ground that COP served proper requests for production of

27  documents on Plaintiffs, but Plaintiffs refused to provide responsive documents.  The motion is

28  based upon this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of

                                    - 1 -

1   Points and Authorities, the Separate Statement of Disputed Issues pursuant to Local Rule 37-2,

2   the pleadings on file in this matter, the Declaration of Jonathan A. Eldredge and such other

3   matter as may be presented in reply or at hearing or of which the Court may take judicial notice.

4         Dated: March 7, 2011

            GLYNN & FINLEY, LLP
5               ADAM FRIEDENBERG
            JONATHAN A. ELDREDGE
6               One Walnut Creek Center
            100 Pringle Avenue, Suite 500
7               Walnut Creek, CA  94596

8

9               By      /s/ Jonathan A. Eldredge
            Attorneys for Defendants
10              BP P.L.C., BP Exploration and Oil, Inc.,
            BP Products North America, Inc., and
11              BP Corporation North America, Inc. and
            ConocoPhillips Company
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COP'S MOTION TO COMPEL

1        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        This matter arises from Defendants' ongoing investigation and remediation of gasoline

4    impacted groundwater and soil at a gasoline service station formerly owned by Defendants and

5    Plaintiffs' adjoining property.  Plaintiffs claim up to $10.5 million in damages, including

6    diminution in property value, lost income and "lost opportunity damages."  They allege that the

7    environmental condition of the property has prevented them from securing financing to

8    redevelop their property.

9        Defendant ConocoPhillips Company ("COP") sent document requests to Plaintiffs

10   pertaining to the allegations of the first amended complaint.  Plaintiffs refused to produce the

11   following categories of documents:

12       1.      Documents related to the formation of the plaintiff trust and its purchase of the

13   property at issue in this matter.  These documents are directly relevant to Plaintiffs' specific

14   factual allegations regarding the identity of the trustee and beneficiaries, the trust's acquisition of

15   the property and Plaintiffs' standing to make the claims alleged.

16       2.      Documents related to Plaintiffs' financial condition, including income generated

17   from the property at issue and financial records that are required to seek financing.  These are

18   directly relevant to Plaintiffs' claim of lost income and their allegation that the environmental

19   condition of the property alone prevented them from refinancing the property.

20       3.      Documents related to the valuation of and loan documents for the restaurant

21   Plaintiffs own and operate on the property.  Such documents are directly relevant to Plaintiffs'

22   claim that their property has diminished in value.

23       As shown more fully below, COP's requests were all specifically tailored and reasonably

24   calculated to lead to the discovery of admissible evidence.  Moreover, Defendants have executed

25   a Northern District standard form protective order that would assure the confidentiality of the

26   requested records.  Because the documents are relevant to the litigation and no privilege prevents

27   their disclosure, the Court should order Plaintiffs to produce the documents.  Further, COP is

28   entitled to reimbursement of the attorneys' fees and costs incurred for this motion.

1    **II.      FACTUAL BACKGROUND**

2        **A.      Plaintiffs' Damage Claims**

3            According to Plaintiffs' first amended complaint, the Barrous Living Trust (the "Trust")

4    owns real property located at 222 West Capitol Expressway, San Jose, California (the "Jimmy's

5    Property"). (Docket No. 34 at ¶ 1.)  Plaintiff Maria Barrous is the trustee for the Trust, and

6    Plaintiff Demetrios Barrous is a beneficiary of the trust. (*Id.*)  At all relevant times, Maria and

7    Demetrios have operated a restaurant named Jimmy's Restaurant on the Jimmy's Property. (*Id.*)

8            Defendants BP Exploration and Oil, Inc. (now BP Products North America, Inc.) and

9    ConocoPhillips Company are former owners of a gasoline service station located at 3951 Snell

10   Avenue in San Jose (the "Snell Property"). (Docket No. 34 at ¶¶ 7, 11.)  After a gasoline release

11   occurred at the Snell Property, which is adjacent to the Jimmy's Property, Defendants conducted

12   environmental investigation and remediation at both the Snell Property and the Jimmy's

13   Property. (*See id.*, ¶ 12, Exh. B.)

14           Plaintiffs allege that the contamination "has caused Plaintiff damages including

15   preventing plaintiff from maximizing the value of its real property causing plaintiff millions of

16   dollars in damage." (Docket No. 34 at ¶ 23.)  Specifically, Plaintiffs are claiming damages of up

17   to $10.5 million dollars (excluding interest and punitive damages) as follows:

18           (1) "Lost opportunity damages for being unable to develop Plaintiffs' property to
                 maximize the property's income earning potential because of the conduct
19               alleged in the First Amended Complaint.  Damages of approximately between
                 $2 million and $4 million;"
20
             (2) "Decreased value of the property because of the contamination and the
21               conduct alleged in the First Amended Complaint.  Damages of approximately
                 between $1.5 million and $3.5 million;"
22
             (3) "Restoration Costs for property to pre-contaminated state, including
23               restoration of original landscaping.  Damages of approximately between
                 $15,000 and $2 million;" and
24
             (4) "Discomfort and Annoyance Damages . . . in an amount to be determined by
25               the jury, but Plaintiffs believe such an amount will be no less than $1
                 million."
26

27   (Declaration of Jonathan A. Eldredge ("Eldredge Decl."), Exh. A at 2.)

28   */ / /*

1       For their alleged "lost opportunity damages," Plaintiffs allege that they spoke to several

2   lenders, including Bank of America, about financing the Jimmy's Property.  Plaintiffs allege,

3   however, that when they disclosed that the property was contaminated, "Plaintiff was informed

4   by all the lenders that they would not finance the project due to the contamination and its serious

5   impact on the value of the collateral."  (Eldredge Decl., Exh. B at 19:12-15.)

6       **B.**    **COP's Discovery Requests and Plaintiff's Refusal to Provide Documents**

7       On November 24, 2010, COP served identical Requests for Production of Documents on

8   Maria Barrous, individually and as Trustee of the Barrous Living Trust, and Demetrios Barrous,

9   individually and as dba Jimmy's Restaurant.  (*See* Eldredge Decl., Exhs. C1-C2.)

10       On January 11, 2011, Plaintiffs served identical responses to COP's discovery requests.

11   (*See* Eldredge Decl., Exhs. D1-D2.)  With respect to COP's Requests for Production of

12   Documents Nos. 1-10, 12, 16-25, 28 and 30, Plaintiff refused to produce documents stating:

13
14
15
16
        In order to determine whether Plaintiff will produce documents in
response to this request, Plaintiff needs to understand the relevance of the
documents sought as well as whether the documents sought can be
narrowed, as well as whether an appropriate protective order may be
reached to cover any produced material.  Thus, Plaintiff's counsel agrees
to meet and confer with defense counsel with regard to this request and the
need for a protective order.

17   (*Id.* at Nos. 1-10, 12, 16-25, 28 and 30.)

18       On January 28, 2011, COP's counsel contacted Plaintiffs' counsel by telephone

19   concerning Plaintiffs' responses to COP's discovery requests.  (Eldredge Decl., ¶ 6.)  Plaintiffs'

20   counsel requested that COP's counsel provide a letter regarding the relevance of the document

21   requests.  (*Id.*)  On February 2, COP's counsel sent a letter to Plaintiffs' counsel addressing the

22   relevance of each of the requests for documents, and also agreeing to maintain the confidentiality

23   of the financial documents:

24
25
26
27
        For the financial records, similar to the *Small* case, Defendants are willing
to maintain the confidentiality of the documents, including a limitation
that only Defendants' attorneys, experts and other relevant witnesses may
view the documents, that disclosure to third parties is prohibited, and that
the documents will be destroyed after the lawsuit, including appeals, is
concluded.  Obviously, if you believe any additional protections are

28

COP'S MOTION TO COMPEL

1    necessary, we will be glad to confer further regarding the specific
     provisions of confidentiality.[1]

2    (*Id.*, Exh. E.)  Plaintiffs have refused to provide any documents in response to Request Nos. 1-

3    10, 12, 16-25, 28 and 30.  (*Id.*, ¶ 8 and Exhs. F-G.)

4    **III.    ARGUMENT**

5        **A.    Legal Standard**

6        "Under the Federal Rules of Civil Procedure, parties may obtain discovery on any

7    nonprivileged matter that is relevant to any party's claims or defenses, or 'for good cause,'

8    discovery of any matter relevant to the subject matter involved in the action.  [Citation.]

9    'Relevant information need not be admissible at trial if the discovery appears reasonably

10   calculated to lead to the discovery of admissible evidence.'  [Citation.]  District courts have

11   broad discretion in resolving whether the information sought is relevant for discovery purposes.

12   [Citation.]"  *Aristocrat Technologies v. Int'l Game Technology,* Slip Copy 2009 WL 3573327 *

13   1 (N.D. Cal. 2009).

14       "A party may make a motion for an order to compel a disclosure pursuant to Fed.R.Civ.P.

15   37(a)(1).  The Federal Rules provide that an evasive or incomplete disclosure, answer, or

16   response is to be treated as a failure to disclose, answer, or respond.  [Citation.]  Furthermore,

17   parties are under a duty to provide discovery regarding those facts that they know about as well

18   as those of which they reasonably ought to have been aware.  [Citation.]"  *Aristocrat*, 2009 WL

19   3573327 at * 1.

20       **B.    COP is Entitled to Production of the Trust Documents (RFP Nos. 1 and 3)**

21       Request Nos. 1 and 3 request documents related to the formation of the Trust and when

22   the Trust acquired the "Jimmy's Property."  (*See* Eldredge Decl., Exhs. C1-C2.)  Plaintiffs make

23   specific allegations concerning the Trust in their first amended complaint, including the name of

24   the trustee (Maria Barrous), ownership of the Jimmy's Property and the Trust's beneficiary

25   (Demetrois Barrous).  (*See* Docket No. 34 at ¶ 1.)  Thus, the Trust documents are relevant to test

26   those factual allegations.  For example, the Trust could obtain damages only for the period of

27   ──────────────

28   [1]   On February 18, the parties executed a Northern District standard form protective order,
     which was filed with the Court.  (*See* Docket No. 42.)

COP'S MOTION TO COMPEL

1    time during which it has owned the Jimmy's Property.  Without the requested documents,

2    Defendants have no ability to verify when that period began.

3          Moreover, a trust can only maintain a lawsuit through its trustee, *see, e.g., Saks v. Damon*

4    *Raike & Co.,* 7 Cal.App.4[th] 419, 427 (1992) ("At common law, where a cause of action is

5    prosecuted on behalf of an express trust, the trustee is the real party in interest because the

6    trustee has legal title to the cause."), and only the owner of the real property at the time it was

7    damaged can sue for damage to the real property, *see, e.g., Krusi v. S.J. Amoroso Construction*

8    *Co.,* 81 Cal.App.4[th] 995, 1005 (2000).  Thus, the Trust documents are relevant to determine

9    whether Maria Barrous is the trustee of the property, and whether the Trust actually owns the

10   property at issue in this lawsuit (i.e., Jimmy's Property).

11         Further, the trust documents are relevant to Plaintiffs' damage claims.  All valid express

12   trusts must contain a "legal purpose," which delineates what the trust was created for, and trusts

13   may include limitations on the trustee and beneficiaries' use of the trust res.  *See, e.g., Estate of*

14   *Johnston,* 47 Cal.2d 265, 270 (1956) ("To constitute a valid express trust, it is essential that there

15   should be (1) a trustee, (2) an estate conveyed to him, (3) a beneficiary, (4) a legal purpose, and

16   (5) a legal term.").  If, for example, the trust documents proscribed the type of redevelopment

17   Plaintiffs claim they intended to pursue, such would necessarily bar any claim against

18   Defendants based on such plans.  By refusing to produce the trust documents, Plaintiffs

19   improperly seek to deprive Defendants of their right to make such a defense.

20         The proper formation of the Trust would also be a prerequisite for any financing of the

21   Trust's property.  Thus, the trust documents are relevant to determine what the trust res was to be

22   used for and whether there were any limitations on the use of the trust res (e.g., limitations on

23   redevelopment of the property or restrictions on burdening the property with debt) that could

24   affect Plaintiffs' damage claims.  Plaintiffs claim that the environmental contamination alone

25   frustrated their ability to borrow against the property.  Defendants have a right to defend the

26   claim, and information regarding the trust purpose and limitations is plainly relevant.

27   / / /

28   / / /

COP'S MOTION TO COMPEL

**C.     COP is Entitled to Production of Plaintiffs' Financial Documents (RFP Nos. 2, 4-10, 12 and 16-25)**

**1.     The requested financial records are directly relevant to Plaintiffs' alleged damages**

Request Nos. 2, 4-10 and 12 seek documents related to the Trust's financial condition from 1997 to the present, including tax, financial and accounting records, and income, disbursement, expenses, revenues and sales statements;[2] Request Nos. 12 and 16-20 seek documents related to Jimmy's Restaurant's income, profits, and expenses; and Request Nos. 21-25 seek documents related to Plaintiffs Maria and Demetrios Barrous' financial condition, including income generated from the Jimmy's Property and Jimmy's Restaurant.  (*See* Eldredge Decl., Exh. C1-C2.)  These documents are the foundation for Plaintiffs' damages claim, and thus, are relevant.

Initially, COP's document requests are relevant to show the amount of income that Plaintiffs generated from the Jimmy's Property and Jimmy's Restaurant during the relevant time period.  (*See, e.g.*, Eldredge Decl., Exhs. C1-C2 at No. 12 ("all DOCUMENTS that RELATE TO any statement or summary of expenses, revenues, income and/or sales RELATED TO the TRUST, the JIMMY'S PROPERTY or JIMMY'S RESTAURANT.").)  Based on Plaintiffs' complaint and discovery responses, it appears that Plaintiffs have continuously run Jimmy's Restaurant on the Jimmy's Property from 1997 to the present and they have received annual income from that venture.  Nevertheless, they allege that they could have made more money had they been able to redevelop the property.

Defendants dispute that such a claim is actionable, but if it were, Plaintiffs' claim for lost *anticipated* revenue would necessarily be offset by the *actual* revenue realized during the period for which Plaintiffs seek damages.  Thus, to determine Plaintiffs' alleged damages, the amount the Plaintiffs earned, or could have earned, from the property during the relevant time period must be subtracted from the amount Plaintiffs allegedly could have earned during the relevant

---

[2]   The statute of limitations for property damage claims is three years.  *See* Cal. Code of Civ. Proc., § 338(b).  Plaintiffs executed a tolling agreement with B.P. Exploration & Oil, Inc. in 2000.  (Docket No. 34, Exh. B.)  Thus, COP sought records starting three years before the tolling agreement.

1   time period absent the alleged environmental contamination (e.g., through redevelopment).  It is

2   possible that Plaintiffs' proposed redevelopment would have been *less* profitable than the

3   restaurant currently operated at the property, and in such an event Plaintiffs would not have even

4   a theoretical loss.  Thus, COP is entitled to Plaintiffs' financial documents that show the income

5   generated from the Jimmy's Property, including from Jimmy's Restaurant, during the relevant

6   time period.

7          Further, Plaintiffs' financial condition is relevant to Plaintiffs' allegation that they could

8   have financed the property absent the alleged environmental contamination.  Plaintiffs seek up to

9   $4 million due to their alleged inability to finance a redevelopment of the property.  (*See*

10  Eldredge Decl., Exh. A.)  If the Plaintiffs' financial condition was such that a bank would not

11  finance the redevelopment even were the property not the subject of an environmental cleanup,

12  then the presence of the alleged environmental contamination is irrelevant and Plaintiffs' damage

13  theory fails.  Plaintiffs allegedly sought financing at Bank of America.  (*See* Eldredge Decl.,

14  Exh. B at 19:5-7.)  Bank of America's Conventional Loan Application for commercial borrowers

15  requires, *inter alia*:  (1) a business debt schedule, including the names of all creditors and an

16  itemization of debts; (2) a personal financial statement from the business owners, including a list

17  of all assets, liabilities, income, expenditures, securities, etc.; (3) a business financial statement,

18  including assets, liabilities and income (including rental income); (4) the business' tax returns;

19  and (5) the business owners' tax returns.  (*See* Eldredge Decl., Exh. H.)  These are the exact

20  categories of documents that COP is seeking through its discovery requests, and thus they are

21  directly relevant to Plaintiffs' damage theories and COP's defenses.

22          **2.      No privilege or privacy right permits Plaintiffs to withhold the
               requested records**

23

24          Plaintiffs object to the disclosure of their financial documents on the basis of privacy.

25  The objection is not well-grounded.  "The concept of privacy is extended to financial privacy in

26  litigation, but the privilege is subject to balancing the needs of the litigation with the sensitivity

27  of the information/records sought.  [Citations.]"  *Davis v. Leal,* 43 Supp.2d 1102, 1110 (E.D.

28  Cal. 1999).  "Where there is no doubt that the information requested implicates traditional

1   notions of what is private information, e.g., associational records, the burden is on the requesting

2   party to demonstrate that the information is directly relevant to the case, and that the information

3   needs of the case outweigh the need for non-disclosure. [Citation.]" *Id.* at 1111.  A "carefully

4   drafted protective order" minimizes the impact of disclosure of private records. *See Sanchez v.*

5   *City of San Jose,* 250 F.R.D. 468, 470 (N.D. Cal. 2008).

6          Here, COP does not dispute that Plaintiffs' financial records are the subject of privacy

7   concerns.  However, as discussed, the documents are highly relevant to Plaintiffs' damage

8   claims—indeed, without Plaintiffs' financial records, no expert witness would be able to opine

9   on the ability of Plaintiffs to seek financing or the alleged amount of lost income.  Further,

10  because Plaintiffs have placed their finances at issue in this case by asserting lost income and

11  claiming the inability to finance the property, the "needs of the case outweigh the need for non-

12  disclosure." *See, e.g., Small v. Travelers Property Casualty Company of America,* Slip Copy

13  2010 WL 2523649 * 2 (S.D. Cal. 2010) (District Court compelled disclosure of tax returns to

14  challenge plaintiff's assertion of lost income).  Finally, COP has agreed to treat the records as

15  confidential (*see* Eldredge Decl., Exh. E) and has executed the Northern District's standard form

16  protective order (*see* Docket No. 42).  Thus, the impact on Plaintiffs' privacy is minimal.  COP

17  seeks no more than what Plaintiffs have put at issue in this case.  Were Plaintiffs permitted to

18  withhold such information, they would effectively deprive Defendants of any opportunity to

19  evaluate the claim of lost income.

20         Plaintiffs object to COP's requests for Plaintiffs' tax returns and records, Request Nos. 4,

21  5 and 21, on the basis of the California tax return privilege. *See Weingarten v. Sup. Ct.*, 102

22  Cal.App.4th 268, 274 (2002).  The tax return privilege has exceptions:  "[t]he privilege will not

23  be upheld when (1) the circumstances indicate an intentional waiver of the privilege; (2) the

24  gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that

25  of the confidentiality of tax returns is involved.  [Citation.]" *Id.*; *see also Small,* 2010 WL

26  2523649 at * 1.  Where the plaintiff places his economic condition at issue (e.g., by claiming lost

27  income or profits), the tax return privilege is inapplicable. *See id.* at * 2 ("the gravamen of

28  Plaintiffs' damages claim is loss of income and profits from the destruction of his avocado trees

1   as a result of the fire."); *Young v. United States* (S.D. Cal. 1993) 149 F.R.D. 199, 205 ("The

2   government must be entitled to obtain discovery regarding Ms. Young's income as reported to

3   the Internal Revenue Service in order to evaluate and defend against her claim for lost wages.");

4   *Newson v. City of Oakland,* 37 Cal.App.3d 1050, 1055 (1974) ("The record indicates that

5   Newson sought damages for loss of income . . . .").

6          Here, as discussed, Plaintiffs have alleged that they sought but were denied financing for

7   the Jimmy's Property—and that such denial was based solely on the environmental condition of

8   the property. Indeed, Plaintiffs have disclosed as witnesses they intend to use in this case

9   employees of the financial institution, including Bank of America, from which Plaintiffs

10  allegedly sought financing. Among the primary documents financial institutions rely on to

11  determine eligibility for financing are tax returns. (*See* Eldredge Decl., Exh. H (Bank of

12  America loan application requires potential borrower to disclose tax returns for business and

13  individual owners).) COP's experts are entitled to view the same evidence the financial

14  institutions—and their employees who are listed as witnesses in Plaintiffs' initial disclosures—

15  would have viewed to determine Plaintiffs' eligibility for financing. Further, Plaintiffs are

16  seeking lost income in this matter. Case law is clear that where lost income is claimed, the

17  "assertion of the privilege is 'inconsistent with the gravamen of [the] lawsuit.'" *Small,* 2010 WL

18  2523649 at * 2. Thus, the limited tax return privilege does not bar disclosure.

19         Defendants have already entered into the Northern District's standard form protective

20  order. (*See* Docket No. 42.) Pursuant to *Small,* Defendants are willing to maintain the

21  confidentiality of the documents, including a limitation that only Defendants' attorneys, experts

22  and other relevant witnesses may view the documents, that disclosure to third parties is

23  prohibited, and that the documents will be destroyed after the lawsuit, including appeals, is

24  concluded. *See Small,* 2010 WL 2523649 at * 3. Plaintiffs' privacy and privilege objections are

25  therefore improper. Defendants must have a legitimate opportunity to defend the substantial

26  damage claims made against them.

27  / / /

28  / / /

- 11 -

COP'S MOTION TO COMPEL

1    **D.     COP is Entitled to Production of the Valuation and Loan Documents
          (RFP Nos. 28 and 30)**

2

3         Request Nos. 28 and 30 request documents related to appraisals, valuations and loan

4    documents for Jimmy's Restaurant.  Plaintiffs contend that as a result of Defendants' alleged

5    contamination, Jimmy's Property decreased in value.  (*See* Eldredge Decl., Exh. A.)  Thus,

6    documents related to the value of the property, including the developed Jimmy's Restaurant that

7    is located on the property, are at issue and relevant.  Further, loans for the Jimmy's Restaurant

8    would affect the value of the property, and thus, are relevant to diminution in value.  Finally,

9    Plaintiffs have alleged in their discovery responses that Jimmy's Property was free and clear of

10   loans and nothing was preventing them from financing the property.  A loan on Jimmy's

11   Restaurant, which likely would include the underlying real property as security, would obviously

12   affect the value of the property, as well as Plaintiffs' ability to borrow additional funds, and thus,

13   is relevant.

14   **E.     COP is Entitled to Reimbursement of its Attorneys' Fees and Costs**

15        COP is entitled to its reasonable attorneys' fees and costs pursuant to F.R.C.P., Rule

16   37(a).  Plaintiffs placed the documents discussed above at issue in this litigation through the

17   allegations in the first amended complaint, and there was no legitimate basis for refusing to

18   produce those documents.  Moreover, Plaintiffs placed their financial condition at issue through

19   their damage claims, including their lost income claim and their allegation that they were unable

20   to finance the property.  Thus, their claims of privacy and the tax return privilege do not support

21   Plaintiffs' refusal to produce financial documents, especially in light of the executed protective

22   order in this case.

23        There are many discovery disputes regarding which reasonable minds can differ.  This is

24   not such an instance.  Where the party refusing to provide discovery does so without legitimate

25   basis, the Rules mandate an award of reasonable expenses incurred by the party moving to

26   compel.  F.R.C.P., Rule 37(a)(5)(A).  Accordingly, COP respectfully requests its reasonable

27   attorneys' fees in the amount of $6,022.50.  (See Eldredge Decl., at ¶ 10.)

28   / / /

1   **IV.**     **CONCLUSION**

2         For the foregoing reasons COP respectfully submit the Court should grant this motion

3 and compel Plaintiffs to produce documents responsive to COP's requests.

4         Dated: March 7, 2011

5                            GLYNN & FINLEY, LLP

                           ADAM FRIEDENBERG

6                            JONATHAN A. ELDREDGE

                           One Walnut Creek Center

7                            100 Pringle Avenue, Suite 500

                           Walnut Creek, CA  94596

8

9                       By       /s/ Jonathan A. Eldredge

10                          Attorneys for Defendants

                           BP P.L.C., BP Exploration and Oil, Inc.,

11                          BP Products North America, Inc., and

                           BP Corporation North America, Inc.,

12                          and ConocoPhillips Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COP'S MOTION TO COMPEL