UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA BARROUS, AN INDIVIDUAL AND AS TRUSTEE OF THE BARROUS LIVING TRUST, ET AL., <br><br> Plaintiffs, <br> v. <br><br> BP P.L.C., ET AL., <br><br> Defendants. | Case No.: C 10-02944 (LHK) PSG <br><br> **ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT CONOCOPHILLIPS COMPANY'S MOTION TO COMPEL; ORDER DENYING DEFENDANT CONOCOPHILLIPS COMPANY'S MOTION FOR SANCTIONS** <br><br> (Docket No. 43) |

Defendant ConocoPhillips Company ("CPC") moves to compel further production of documents. Additionally, CPC moves for sanctions. Plaintiffs Maria Barrous, an individual and Trustee of the Barrous Living Trust, Demetrios Barrous, an individual doing business as Jimmy's Restaurant, oppose the motion. On April 12, 2011, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel, CPC's motion to compel is GRANTED-IN-PART and DENIED-IN-PART and CPC's motion for sanctions is DENIED.

# I. BACKGROUND

Defendants BP Exploration and Oil, Inc. (now BP Products North America, Inc.) ("BP") and CPC formerly owned a gasoline service station located at 3951 Snell Avenue in San Jose.[1] (the "gas station property").  After specific concerns arose in the 1980s and 1990s regarding the leaking of hazardous materials from underground storage tanks in or around the gas station, Defendants and the Santa Clara Valley Water District ("SCVWD") conducted an environmental investigation and remediation of it and the adjacent property.  Plaintiffs own the adjacent property located at 222 West Capitol Expressway in San Jose and have operated Jimmy's Restaurant (the "restaurant property") there from 1997 to the present.[2]  The hazardous materials from the underground storage tanks contaminated the groundwater and soil of the gas station and the restaurant properties.

In 2000, the parties executed an "Access Agreement" that allowed BP to investigate and determine the nature and scope of the contamination that had occurred on the restaurant property.  Following its investigation, BP was to remediate any damage.

In 2002, the State of California sued BP alleging violations of California Health and Safety Code §25299, which governs the operation of underground hazardous storage tanks.  On the same day the complaint was filed, BP executed a stipulated judgment with the State of California, admitted it was legally obligated to remedy the pollution caused by leaking gas storage tanks at the gas station property, and paid a judgment totaling $230,000.

Plaintiffs allege that Defendants have failed to clean up and remediate the damage caused

---

[1]     CPC is the successor in interest to BP for the conduct alleged in the complaint and has contractually assumed liability for the damages that flow from such conduct.  FAC, ¶ 7. Until very recently, CPC was the owner of the gas station property.  *See id.*

[2]     Maria Barrous is the mother of Demetrious Barrous and they are the owners of a business doing business as Jimmy's Restaurant.  The Barrous Living Trust ("Trust") dated October 22, 2004 is the owner of the real property on which the restaurant is located.  FAC, ¶ 1. Maria Barrous is the trustee of the Trust and Demetrious Barrous is the beneficiary of the Trust. *See id.*

to the restaurant property.³  As a result of the contamination, Plaintiffs allege damages totaling

$10.5 million, including dimunition in property value, lost income, and lost opportunity

damages.  Moreover, Plaintiffs allege that the damage to the restaurant property has prevented

them from securing any financing to redevelop it.

Specifically, Plaintiffs have alleged the following damages:

1.      "Lost opportunity damages for being unable to develop Plaintiffs' property to maximize

the property's income potential because of the conduct alleged in the First Amended Complaint.

Damages of approximately between $2-4 million;"

2.      "Decreased value of the property because of the contamination and the conduct alleged in

the First Amended Complaint.  Damages of approximately between $1.5-3.5 million;"

3.      "Restoration costs for property to pre-contaminated state, including restoration of original

landscaping.  Damages of approximately between $15,000 and $2 million;" and

4.      "Discomfort and annoyance damages . . . in an amount to be determined by the jury, but

Plaintiffs believe such an amount will be no less than $1 million."

On November 24, 2010, CPC served Plaintiffs Maria Barrous, individually and as

Trustee of the Barrous Living Trust, and Demetrious Barrous, individually and as Jimmy's

Restaurant each with document requests.

On February 18, 2011, the parties filed a stipulated protective order.

## II.  LEGAL STANDARD

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter

that is relevant to any party's claim or defense."⁴  "Relevant information need not be admissible

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

---

³       In the First Amended Complaint, Plaintiffs allege the following claims: (1)
nuisance (against BP); (2) trespass (against BP); (3) negligence (against BP); (4) breach of
contract (against BP); (5) breach of the covenant of good faith and fair dealing (against BP); (6)
nuisance (against CPC); (7) trespass (against CPC); (8) negligence (against CPC); (9) breach of
contract (against CPC); (10) breach of the covenant of good faith and fair dealing (against CPC);
(11) interference with contractual relations (against CPC); (12) declaratory relief (against all
defendants).  *See* Docket No. 34.

⁴       *See* Fed. R. Civ. P. 26(b).

1    evidence."[5]

2          Under California law, relevant information may be withheld from production based on

3    the right to privacy, but privacy rights are not absolute.[6]  Courts engage in a careful balancing of

4    the right of privacy against the need for discovery.[7]  In addition, "there [is] no recognized federal

5    or state constitutional right to maintain privacy of tax returns . . . California courts, however,

6    have interpreted state taxation statute as creating a statutory privilege against disclosing a tax

7    return."[8]  Like privacy rights, "[t]he privilege against disclosure [of tax returns] is qualified, not

8    absolute."[9]

9          There are three different grounds on which the qualified privilege against disclosure of

10   tax returns is set aside, including (1) the circumstances indicate an intentional waiver of the

11   privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy

12   greater than that of the confidentiality of tax returns is involved.[10]  "The party seeking disclosure

13   only has to establish one of the three grounds set out in *Weingarten* to compel disclosure of a tax

14   return."[11]  "A trial court has broad discretion in determining the applicability of a statutory

15   privilege," including the tax return privilege.[12]

16                              **III.  DISCUSSION**

17         In the First Amended Complaint, Plaintiffs allege only California state law claims.

18   Defendants removed the case from state court on grounds of diversity jurisdiction.  The parties

19

20         [5]      *See id.*

21

22         [6]      *See, e.g., 21X Capital Ltd. v. Werra*, Case No. C 06-04135 JW (HRL), 2008 WL
     753907, *1 (N.D.Cal. Mar. 19, 2008)

23         [7]      *See id.*

24         [8]      *See Weingarten v. Superior Court,* 102 Cal.App.4th 268, 274 (2002).

25         [9]      *See id.  See also, Young v. United States,* 149 F.R.D. 199, 201 (S.D.Cal. 1993).

26         [10]     *See Small v. Travelers Property Casualty Co. of America,* Case No. C 08-1160
     BTM (WMC), 2010 WL 2523649, at *1 (S.D.Cal. Jun. 21, 2010).

27         [11]     *See id.*

28         [12]     *See id.*  (internal citations omitted).

therefore agree that for purposes of this motion, California law applies regarding the right to privacy and the tax return privilege.

CPC moves to compel production of documents responsive to document request nos. 1-10, 12, 16-25, 28 and 30.

**A.    Plaintiffs' Trust Documents (Document Request Nos. 1 and 3)[13]**

CPC seeks documents related to the formation of the trust and when the trust acquired the property.  CPC argues that the documents sought will establish the name of the trustee, the name of the Trust's beneficiary, confirm the time period that the Trust has owned the restaurant property and the express purpose of the Trust.

Plaintiffs dispute the relevancy of the documents sought.  They also argue the scope of the documents sought is overly broad and claim that production is proscribed by California's "right of privacy."[14]

The court concludes that the requests for trust documents seek relevant information.  At a minimum, the very "Access Agreement" under which Plaintiffs seek relief identifies "John, Maria and Jimmy Barrous" as the owners of the property, while the First Amended Complaint alleges that the Trust, not the Barrous', are the property owners.  CPC is clearly entitled to trust documents that relate to when, if at all, the property was transferred to the Trust. Defendants are also entitled to review the trust document itself, to determine at a minimum, whether the terms of the Trust permit the type of redevelopment Plaintiffs claim they were denied by Defendants' actions.  While California law does recognize a right to privacy applicable to these documents, the right is not absolute, and the specific allegations Plaintiffs raise regarding the Trust are inconsistent with shielding these documents from production here.

Nevertheless, the scope of CPC's trust document requests is overbroad in light of the specific relevance identified by CPC and described above.  Indeed, at oral argument, CPC's

---

[13]    The court notes that in its moving papers, CPC categorizes its specific requests (nos. 1,3, etc.), and Plaintiffs did not challenge this categorization in their opposition or at oral argument.  The court therefore adopts this scheme as provided in this heading "A", and "B" and "C" below.

[14]    *See Estate of Gallio v. Conigliaro,* 33 Cal.App.4th, 592, 598 (1995).

counsel acknowledged that its Trust-related requests seek nothing less than every document relating to the Trust in any way.[15] Plaintiffs therefore shall produce a copy of the Trust itself and all documents concerning transfer of the disputed property to the Trust, ownership of the property, and the purpose of or limitations imposed by the Trust.[16]  Accordingly, CPC's motion to compel document request nos. 1 and 3 is granted in part and denied in part.

**B.    Plaintiffs' Financial Documents (Document Request Nos. 2, 4-10, 12 and 16-25)**

CPC seeks financial records related to the financial condition of Plaintiffs' Trust from 1997 to the present, including tax, financial and accounting records, and income, disbursement, expenses, revenues and sales statements.[17]  In addition, CPC seeks documents related to Jimmy's Restaurant, including income, profits and expenses.[18]  Finally, CPC seeks documents related to the financial condition of Maria and Demetrious Barrous, including income generated from the property and the restaurant.

CPC argues the documents sought are relevant to Plaintiffs' extensive damages claim. For example, Plaintiffs have operated Jimmy's Restaurant from 1997 to the present.  They allege that if they had been able to redevelop the property, they would have been more profitable.  CPC argues that any actual revenue from the restaurant should be offset from the amount Plaintiffs allege they could have made if the restaurant property had not been contaminated.  CPC further argues that Plaintiffs' own financial condition is relevant to their allegation that they could have financed the restaurant property for alternative development if there had not been any contamination of it.

Plaintiffs object to the broad scope of financial documents sought, essentially arguing that Defendants seek nothing less than all financial documents in their possession.

The court again finds that the appropriate balancing of the Plaintiffs' privacy rights

---

[15]    *See* 4/12/11 Hearing, FTR Gold Tr. 10:04:20-10:06:20.

[16]    *See Krusi v. S.J. Amoroso Constr. Co.,* 81 Cal.App.4th 995, 1005 (2000) (holding that only property owner is entitled to maintain claim for property damage).

[17]    *See* document request nos. 2, 4-10 and 12.

[18]    *See* document request nos. 12, 16-20.

against the very nature of their claims requires production of the requested documents. To the extent these requests seek tax returns, the court similarly finds that the gravamen of the lawsuit is inconsistent with application of the privilege because the documents sought may verify or contradict Plaintiffs' damages claim.  The Plaintiffs' claim here that CPC's contamination damaged their economic opportunity is analogous, if not equivalent, to the claim for lost income and profits in *Smalls v. Travelers* that justified production of federal and state tax returns in that case.[19]  This is especially true where, as here, the party resisting production has failed to identify other financial documents or records that it had produced that would supply the relevant information.  Accordingly, CPC's motion to compel documents responsive to document request nos. 2, 4-10, 12, 16-25 is granted.

**C.     Plaintiffs' Valuation and Loan Documents (Document Request Nos. 28 and 30)**

CPC seeks documents related to appraisals, valuations and loan documents for Jimmy's Restaurant.

CPC argues the documents sought are relevant to determine if contamination to the restaurant property has caused a decrease in its value, including the restaurant itself.  CPC argues that as part of Plaintiffs' damages claim, they have alleged a diminution in value of the restaurant property.

Plaintiffs object to the requests on the grounds that CPC is merely speculating that any underlying loans would affect the value of the restaurant property.  Plaintiffs further argue that the discovery sought is overly broad.

The discovery sought is relevant because it relates to Plaintiffs' damages claim.  The need for discovery clearly outweighs the right to privacy where the heart of Plaintiffs' claim is that CPC's action devalued their property and denigrated their ability to secure a loan for the restaurant property.  Accordingly, CPC's motion to compel production of documents responsive to document request nos. 28 and 30 is granted.

**D.     CPC's Motion for Sanctions**

Pursuant to Rule 37(a), CPC moves for sanctions totaling $6,022.50.  It argues that

---

[19]     *See Smalls*, 2010 WL 2523649, at *2.

1    Plaintiffs had no legitimate basis to withhold the documents sought.

2           Civ. L.R. 7-8 requires that any motion for sanctions be separately filed.

3           CPC did not separately move for sanctions.  Accordingly, CPC's motion for sanctions is

4    denied.

5                                    **IV. CONCLUSION**

6           For the foregoing reasons, CPC's motion to compel is GRANTED-IN-PART and

7    DENIED-IN-PART.  Plaintiffs shall produce the documents ordered above no later than April

8    30, 2011.

9           CPC's motion for sanctions is DENIED.

10   Dated:   April 14, 2011

11

12                                  _____
                                    PAUL S. GREWAL
13                                  United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28